13592

McNEIL, REC'R, v. ARROWSMITH

(168 S. E., 191)

September, 1931.

*Mr. D. E. Ellerbe,* for appellant,

*Messrs. D. Gordon Baker* and *Preston B. Thames,* for respondent,

March 1, 1933.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

As a statement of this case we adopt, in the main, the agreed statement of counsel set forth in the transcript of record.

The action was commenced in the Court of Common Pleas of Florence County, September 15, 1931. The complaint alleges that the First National Bank of Florence, S. C., failed on March 25, 1925; and that thereafter plaintiff was duly appointed and qualified as receiver of said bank, and was then acting in such capacity; that P. H. Arrowsmith, at the time of his death, was the owner of 45 shares of the capital stock of said bank, having a par value of $100.00 per share; that a 100 per cent. stock assessment was ordered by the Comptroller of the Currency of the United States against all stockholders, including P. H. Arrowsmith, calling upon them to pay such assessment on or before August 2, 1927; that due notice of assessment was given the said P. H. Arrowsmith, and that he had failed to pay any part thereof; that he died in 1931, and that the defendant had been duly appointed and had qualified as administratrix of his estate, and was acting in such capacity; that proof of claim had been properly filed with the administratrix, but that she had refused to allow same; and that by agreement of all parties this action was instituted to establish said claim, but without the intention of attempting to secure a preference by said action.

The defendant answered, alleging, upon information and belief, that prior to the death of P. H. Arrowsmith an

agreement had been entered into by and between the said P. H. Arrowsmith and the receiver of the above bank, by and with the consent of the Comptroller of the Currency, whereby a compromise settlement of this stock assessment was arranged at and for the amount of $1,250.00, there being credited on such compromise settlement the sum of $750.00 as attorneys' fees owed by the receiver to the said P. H. Arrowsmith; that, while this agreement was in force and effect, and without notice to the said P. H. Arrowsmith of any rescission of the same, he departed this life, and that the defendant as his administratrix occupies the same position as the deceased; that the compromise agreement had been in part executed by the said P. H. Arrowsmith by the credit of $750.00 as attorneys' fees due him on the compromise settlement and no part thereof had been paid or tendered back to him or to the defendant as administratrix; that the defendant was willing to consent to a claim being filed for $500.00 against the estate.

The matter came on to be heard at the November, 1931, term of the Court of Common Pleas for Florence County before his Honor, Judge M. M. Mann, and a jury; the amount involved being $4,500.00, with interest at 7 per cent. per annum from August 2, 1927. On the trial of the issue, and in due time, the plaintiff moved for a verdict by direction in his favor upon the grounds hereafter stated. This motion was refused and the matter submitted to the jury, whereupon a verdict was rendered in favor of the plaintiff for $500.00, with interest at 7 per cent. from January 28, 1928. In due time plaintiff noticed a motion for a new trial. This motion was made and the matter taken under advisement by the presiding Judge, who on April 25, 1932, issued his order overruling the motion. The order simply states that after due consideration the Judge is of the opinion that the motion for a new trial should be refused. Judgment was regularly entered on April 28, 1932, and in due time and form the plaintiff served notice of intention to appeal to this Court.

In the motion for a directed verdict, made by counsel for the plaintiff, and in the statement of the grounds upon which the motion was based, the following occurred in connection with the motion, which we quote herewith for the purpose of giving a clearer undertsanding of the questions raised by the exceptions:

"Mr. Ellerbe: We would like to make a motion for directed verdict. We base that motion first, on the testimony of Mr. McNeil, the Receiver, that a Receiver of a National Bank has no authority to compromise a stock assessment; as a matter of fact, any other obligation, without first securing the consent of the Comptroller of the Currency, and going beyond that, in securing an order of a Court of Competent jurisdiction. Those two things are absolutely necessary. His testimony as to that is positive, and as a matter of fact, that is the law. In this case there is no question but that at one time negotiations were entered into between Mr. Arrowsmith, and the Receiver, and I am frank with the Court when I say, if at that time he had paid the $500.00 that the Comptroller would have accepted the compromise. Unfortunately he procrastinated and did not pay the $500.00. So far as the evidence goes, there is nothing to show the Comptroller ever accepted the offer of Mr. Arrowsmith to pay the $500.00. There is positive testimony here no authority of Court has ever been secured authorizing the Receiver to accept $500.00. Without both of those links, it would be utterly impossible for any compromise to have been carried through. I may be the Receiver and have said 'I'll take $500.00, and Mr. Arrowsmith said he would pay $500.00 fifteen minutes before he was killed'—that is no contract. The evidence here is that there has been a material change in Mr. Arrowsmith's condition prior to and after his death. Under the statement of the letter put in evidence, it might have been, in the ordinary course of events, the Comptroller would have accepted the $500.00, but that condition has changed. Therefore, on the ground that the Re-

ceiver of a National Bank cannot compromise a stock assessment without first securing the approval of the Comptroller of the Currency and on the further ground he must go into Court and secure an order from the Judge before he can accept then, we make a motion for directed verdict in the sum of $4,500.00.

"Mr. Baker: (Argument.)

"The Court: I am inclined to think I will have to submit the question of waiver to the jury under the testimony.

"Mr..Ellerbe: I would like for you to hear me one minute on the waiver proposition. (Argument.)

"The Court: I think the Comptroller could be held to have waived it, and I will have to leave it to the jury under express instructions as to what constitutes waiver."

Five exceptions are presented, but counsel for appellant states in his brief that the appeal is based upon the refusal of the presiding Judge to direct a verdict for the full amount asked for in the complaint, and also from the order of the trial Judge in refusing appellant's motion for a new trial, stating that the questions involved in the appeal are as follows:

"1. Could there have been a valid compromise of liability under stock assessment in this case when such compromise had never been approved by the Comptroller of the Currency, nor had any order of a Court of competent jurisdiction been secured authorizing same?

"2. Could there have been a valid compromise of stock assessment prior to Act of Congress of February 5, 1930, authorizing such compromise?

"3. Was there a valid contract between the receiver and P. H. Arrowsmith to compromise stock assessment liability in this case?"

These questions we shall consider together.

There was ample testimony adduced at the trial of the case to take the case to the jury on the question of whether or not there was an agreement entered into between the re-

ceiver of the said bank and Mr. Arrowsmith as to the amount to be paid by Mr. Arrowsmith in settlement of the amount of his assessment on his statutory liability on the bank stock in question. But it is the contention of the appellant, the present receiver of said bank, that said agreement was invalid and not binding on the receiver, for the reason that, under his contention, said compromise settlement was not approved by the Comptroller of the Currency, nor by the Court, and, further, for the reason that the transaction took place prior to the Act of Congress of February, 1930 (12 USCA § 67), authorizing compromises in such cases.

From the record in the case it appears that, since the closing of the bank involved, its affairs have been in the hands of six different persons as receivers. They were appointed and served in the following order: Mr. Williams, Mr. Moore, Mr. Ellerbe, Mr. Early, Mr. Boyles, and Mr. McNeil, the present receiver. Mr. Ellerbe, above named, after resigning as such receiver, became the attorney for the receiver, Mr. Early, and is at this time attorney for the receiver, Mr. NcNeil, and appeared for him in this case. It seems to be practically conceded that at the time the bank involved closed its doors the bank was indebted to Mr. Arrowsmith for legal services rendered it, and that such services were well worth the sum of $750.00. Mr. Arrowsmith did not file a claim with the receiver for his fees, but it is the contention of his widow, Mrs. Helen T. Arrowsmith, as administratrix of the estate of Mr. Arrowsmith, that under the alleged agreement set forth in the complaint the said sum was applied on the amount agreed upon in the settlement of the assessment on his statutory liability on his stock in the said bank. Mr. Early, the receiver in charge when the alleged settlement agreement was made, did not testify in the case; neither did the Comptroller of the Currency testify, and, Mr. Arrowsmith being dead at the time of the trial, it was difficult to get any direct testimony bearing on the question as to whether or not the Comptroller

of the Currency approved the agreement, and necessarily the truth bearing on the question had to be ascertained from inferences surrounding the entire transaction. We find in the record copy of letter, which we quote herewith, written to the Comptroller of the Currency, which throws considerable light on the question involved:

"January 27th, 1928.

"Comptroller of the Currency, Washington, D. C.
"Re: Offer of Compromise Assessment 45 shares Stock of P. H. Arrowsimth.

"Dear Sir: Mr. P. H. Arrowsimth of Florence, South Carolina, former attorney for the First National Bank of Florence offers a compromise settlement of his past due assessment on 45 shares of stock in this bank. He offers $500.00 cash and his fees amount to $750.00 in two cases which were in his hands at the close of the bank.

"The cases were *Baker v. Dewitt*, Asset No. 122 in which the trust recovered property valued at from $1,500.00 to $2,000.00. The *Edwards case* grew out of an Asset which had been charged off before the closing of the bank. According to statements of the former officials of this bank and Mr. D. E. Ellerbe, former Receiver for this trust, Mr. Arrowsmith did a great deal of work in these cases, both of which were contested in every possible way. They also state that his fees in the amount of $750.00 are reasonable for the amount of work done in both cases. The *Baker case* was carried to the Supreme Court and finally decided for the bank. The Edwards matter was decided for the bank but nothing has been recovered.

"By a review of correspondence relative to Mr. Arrowsmith by this trust and also the Farmers and Merchants National Bank of Lake City, South Carolina, it will be seen that he is execution proof and it will be of very little value to take judgment against him. The former officials of this bank are of the opinion that this settlement is the

best obtainable from Mr. Arrowsmith and I concur in their opinion.

"Please authorize this settlement.

"Respectfully yours,

"Receiver."

It is the contention of appellant that the Comptroller of the Currency never replied to the above letter. It is hard to conceive of that office being so derelict. The respondent had no way of proving that a reply was made. She gave notice to produce the reply letter, and that was as far as she could go. As stated, the Comptroller did not testify in the case, neither did any one representing his office testify, and, further, the receiver in charge of the bank's affairs when the agreement in question is alleged to have been made did not testify. What information Mr. Arrowsmith acquired concerning the approval of the agreemnt could not be put before the Court. Mr. Arrowsmith was dead; his lips were closed. But one thing is certain, as the record discloses, Mr. Arrowsmith never filed a claim for his fees, notwithstanding the fact that it is conceded that he was badly in need of money at that time. It is hard to conceive of Mr. Arrowsmith not filing a claim for a sum as large as that amount ($750.00), conceded to be justly due him, when he needed money so badly, and a reasonable inference to be drawn under the circumstances is that the said sum was applied on the said assessment under the alleged agreement, and it is reasonable to infer also that the receiver in charge at that time accepted the said sum and did so with the approval of the Comptroller of the Currency. This we say is a reasonable inference to be drawn under all the testimony and the surrounding circumstances. It was a jury question. In this connection we call attention to the statement of appellant's counsel (which statement is quoted above) in moving for direction of a verdict. In making the motion for direction of a verdict, counsel for appellant stated: "In this case there is no question but that at one time negotiations were en-

tered into between Mr. Arrowsmith, and the Receiver, and I am frank with the Court when I say, if at that time he had paid the $500.00 that the Comptroller would have accepted the compromise. Unfortunately he procrastinated and did not pay the $500.00."

If the receiver in control of the bank's affairs at the time of the making of the alleged settlement agreement accepted with the approval of the Comptroller the said sum of $750.00, and applied the same on the amount which the parties agreed in the settlement, in our opinion, the failure to thereafter promptly pay the balance, $500.00, would not destroy the agreed settlement. Mr. Arrowsmith would still owe the amount of $500.00, with interest from the time the assessment was made, but he would not owe anything in addition. In this connection we call attention to the fact that there was no offer made by the present receiver to return the said sum of $750.00.

As to the reference made by one of the witnesses for the plaintiff, that the Comptroller's office had recently written a letter stating, in effect, that no approval had been given to the said settlement, such testimony was, of course, hearsay and incompetent. It must be borne in mind that several years had passed from the time the agreement was made, and the application of the said $750.00, to the time of the commencement of this action and the trial of the same. The Court will take judicial notice of the fact that the affairs of the office of the Comptroller of the Currency are handled by more than one person. As stated, no one from that office testified in the case, and, so far as the record before us discloses, no definite information from that office was furnished the Court during the trial of the case. It is unreasonable to assume that the office of the Comptroller of the Currency would not answer the letter.

As to the contention that there was no order of the Court approving the settlement in question, and that the Act of Congress referred to, authorizing such settlement, was not

enacted until after the agreement in question was made, we deem it sufficient to state that in our opinion it was a matter that could be waived by the receiver, acting under the approval and authority of the Comptroller, under the circumstances of this case. Certainly the receiver and Comptroller would have no right to destroy at will the said agreement, if such agreement was made, and that was a jury question, after getting the benefit of the $750.00. Furthermore, the grounds upon which the motion for direction of a verdict was based did not include any reference to the fact that the Act of Congress referred to was passed after the making of the alleged agreement. We think his Honor, the trial Judge, properly submitted to the jury the question of waiver and gave proper instruction as to the same. There is no appeal from his charge.

As to the motion for a new trial, so far as the record discloses, no grounds were stated upon which the motion was based. In making a motion for a new trial, the grounds upon which the motion is based should be stated. Otherwise the trial Judge has nothing before him to act upon, and this Court has nothing to review.

While we have not made reference herein to every contention of appellant, we have duly considered the same in connection with the entire record.

The exceptions are overruled, and the judgment of the lower Court affirmed.

MR. JUSTICE STABLER concurs.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE BONHAM concur in result.